`

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BARRY BROWN, JENNIFER BROWN, JANE DOE 1, and JANE DOE 2,<br><br>Plaintiffs,<br><br>    v.<br><br>JON ALEXANDER, DEAN WILSON, ED FLESHMAN, JULIE CAIN, CINDY SALATNAY, COUNTY OF DEL NORTE, and DONALD CROCKETT,<br><br>Defendants. | ) Case No. 13-01451 SC<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART MOTIONS TO<br>) <u>DISMISS</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I. **INTRODUCTION**

        Now before the Court are separate but related motions to dismiss the above-captioned Plaintiffs' complaint, filed by (1) the "County Defendants," Jon Alexander, Dean Wilson, Ed Fleshman, Julie Cain, Cindy Salatnay, and the County of Del Norte, California; and (2) Donald Crockett.  ECF Nos. 31 ("Crockett MTD"), 32 ("County MTD") (both filed under seal).  The motions are fully briefed.  ECF Nos. 41 & 42 ("Opp'ns") (both filed under seal), 44 ("County Reply"), 46 ("Crockett Reply").  As explained below, the Court GRANTS in part and DENIES in part the County Defendants' motion to

dismiss, and GRANTS Defendant Crockett's motion to dismiss.

**II.   BACKGROUND**

    **A.   Requests for Judicial Notice**

All parties filed requests for judicial notice, ECF Nos. 27 ("County RJN"), 30 ("Crockett RJN"), though Plaintiffs' request is included in their opposition to Defendant Crockett's RJN, ECF No. 39 ("Opp'n to RJN") (filed under seal).  The Court GRANTS Plaintiffs' unopposed RJN under Federal Rule of Evidence 201.

Plaintiffs object to the County RJN on the grounds that the County Defendants do not explain why the documents -- all documents from the Del Norte Superior Court's Juvenile Division -- are relevant.  The Court OVERRULES Plaintiffs' objection on that point, but Plaintiffs are right that the Court may only take judicial notice of the fact that the documents exist (not any facts alleged in the documents).  To that extent, the Court GRANTS the County Defendants' RJN because the fact of the Superior Court's proceedings and the documents' existence is not subject to reasonable dispute.  Further, these documents are relevant -- as discussed below -- to whether the Court has jurisdiction over this case.

Plaintiffs object to the Crockett RJN on the same grounds discussed above.  The Court makes the same findings: Plaintiffs' objections are OVERRULED to the extent that they challenge the Court's ability to take judicial notice of another court's proceedings, or the filings of certain documents.  The Crocket RJN is GRANTED.

The Court does not take judicial notice of the truth of any

United States District Court
For the Northern District of California

fact from any of the RJNs' exhibits.  At the pleading stage, the Court cannot resolve or consider factual disputes outside the pleadings without converting these motions to dismiss to motions for summary judgment, which the Court declines to do.  See United States v. 14.02 Acres of Land More or Less in Fresno Cnty., 547 F.3d 943, 955-56 (9th Cir. 2008) (district courts may take judicial notice of certain records, for limited purposes, and a court need not convert a motion to dismiss to a motion for summary judgment if the facts noticed are not subject to reasonable dispute).  Again, the Court takes notice only of these documents' existence and the state court proceedings.

Separately, Plaintiffs suggest that all Defendants have somehow engaged in violations of Rule 26 by filing in their RJNs documents that Plaintiffs do not have.  The Court finds no evidence of this.  Defendants filed only documents from court proceedings in which Plaintiffs were undisputedly involved.

### B.   Summary of Allegations

The following facts are taken from Plaintiffs' first amended complaint, ECF No. 12 ("FAC"), and, where appropriate, the parties' RJNs.  Plaintiff Jennifer Brown is the daughter of Plaintiff Barry Brown.  FAC ¶ 7.  Jane Does 1 and 2, born January 1, 2007, are Ms. Brown's daughters and Mr. Brown's maternal granddaughters.  Id. Defendant Crockett is the father of Jane Does 1 and 2.  Id. ¶ 9. He also co-owns a flower bulb farm, which is a major employer in Del Norte County, and has been a contributor to the electoral campaigns of the elected Defendants Alexander and Wilson.  Id.   ¶ 8.  He and Ms. Brown were married from July 2007 until August 2009, when their divorce was finalized and shared custody of their

3

1  daughters was appointed with primary care to Ms. Brown.  Id. ¶¶ 8-
2  9.

3      The County Defendants are Jon Alexander, former District
4  Attorney for Del Norte County during all relevant times; Sheriff
5  Dean Wilson; Sheriff's Detective Ed Fleshman; Del Norte County
6  Child Protective Services ("CPS") Supervisor Julie Cain; CPS Social
7  Worker Cindy Salatnay; and the County of Del Norte ("County"),
8  which operated, controlled, and maintained the Sheriff's
9  Department, CPS, and District Attorney's Office ("DAO").  Id. ¶¶ 4-
10  6.

11      The allegations in Plaintiffs' complaint arise from Ms. Brown
12  and Mr. Crockett's acrimonious divorce and Ms. Brown's contention
13  that Mr. Crockett abused and molested Jane Does 1 and 2.  As it
14  must on a Rule 12(b)(6) motion to dismiss, the Court assumes the
15  truth of these allegations.

16      Plaintiffs allege that in June 2009, Jane Doe 1 told Ms. Brown
17  that Mr. Crockett had molested her.  Id. ¶ 10.  Ms. Brown called a
18  County sheriff and reported her daughters' complaints, after which
19  the sheriff took no action.  Id.  Ms. Brown took Jane Doe 1 to the
20  hospital, where hospital staff refused to perform a Sexual Assault
21  Response Team ("SART").  Id.  One week later, a SART exam was
22  performed at the hospital, but no action or further investigation
23  occurred; neither Mr. Crockett nor Jane Doe 1 were interviewed; and
24  no prior complaint against Mr. Crockett was investigated.  Id.

25      Plaintiffs allege that several years later, around late
26  November 2011, Jane Does 1 and 2 told Ms. Brown that Mr. Crockett
27  showed them movies of naked men and women on television.  Id. ¶ 11.
28  Around December 3, 2011, Ms. Brown reported this to the County

**United States District Court**
For the Northern District of California

1  sheriff's department, after which a deputy took a taped statement
2  from the daughters but allowed Mr. Crockett to pick them up for
3  visitation.  Id.  No further investigation occurred, and when Ms.
4  Brown asked Defendants Fleshman and Alexander, as well as other
5  county deputies and a city police officer, why no authorities had
6  taken action, she was told that her daughters' interview tape had
7  been destroyed and that showing pornography to children was not a
8  criminal offense.  Id.

9      Around January 27, 2012, Jane Does 1 and 2 returned to Ms.
10  Brown's home after staying with their father for several days,
11  after which the girls appeared physically ill and disheveled.  Id.
12  ¶ 12.  Ms. Brown took them to the hospital, where Sutter Coast
13  Hospital Urgent Care ("SCHUC") examined them and filed a report
14  with Child Welfare Services ("CWS"), accusing Mr. Crockett of
15  medical neglect.  Id. ¶ 13.  Two days later, on January 29, 2012,
16  Jane Does 1 and 2 returned to the hospital, where SCHUC filed
17  another CWS report alleging that both children claimed to have been
18  sexually molested by Mr. Crockett.  Id. ¶ 14.  Plaintiffs allege
19  that all of the Defendants (apparently excluding Mr. Crockett) were
20  made aware of these claims but chose not to investigate them
21  because Mr. Crockett's family exerted so much political and
22  personal influence in Del Norte County.  Id.

23      On January 30, 2012, Mr. Brown contacted the District Attorney
24  of neighboring Humboldt County to obtain a SART exam of Jane Does 1
25  and 2.  Id. ¶ 15.  Plaintiffs did so apparently because they were
26  concerned that Jane Does 1 and 2's complaints had gone ignored;
27  Defendants had not investigated any claims of abuse; and because
28  Mr. Crockett still had court-ordered visitations with his

United States District Court
For the Northern District of California

daughters, which Plaintiffs worried would provide opportunities for abuse. See id. Mr. Brown contacted Defendants via letter at this point, and also informed Mr. Alexander by phone that he would take Jane Does 1 and 2 out of Del Norte County for their safety. Id. Mr. Brown communicated with Defendants -- specifically Mr. Alexander, the District Attorney -- per an exception to the California kidnapping statute for cases in which a person with a right to custody of a child who was the victim of domestic violence may take or conceal the child as a protective measure, provided that the person contact the district attorney of the county where the child resided. See Cal. Pen. Code § 278.7. [1] Mr. Brown then took Jane Does 1 and 2 to Humboldt County. FAC ¶ 15.

Soon after that, on February 8, 2012, a Del Norte County Magistrate Judge issued an arrest warrant for Mr. and Ms. Brown, per the request of Defendants Wilson, Fleshman, and Alexander. Id. ¶ 16; County RJN Ex. B ("Warrant"). According to Plaintiffs, the affidavit in support of the Warrant alleged that Mr. and Ms. Brown had kidnapped Jane Does 1 and 2 and that their whereabouts were unknown. FAC ¶ 16. Plaintiffs contend these Defendants knew that the basis for the Warrant was false at the time they presented it to the magistrate, because Mr. Brown had contacted the DAO with the details required per California Penal Code section 278.7's exception to the kidnapping statute. See id. Nevertheless, the Warrant issued and was distributed to law enforcement. Id. On February 9, 2012, Mr. Brown was arrested by Defendant Fleshman, who

---

[1] Plaintiffs' complaint's reference to California Penal Code section 278.5 is apparently a typo. That section sets out the kidnapping offense. Section 278.7 is the exception to section 278.5.

United States District Court
For the Northern District of California

1   apparently agreed with Defendant Alexander at the time of the

2   arrest that no criminal charges would be filed against Mr. Brown.

3   Id.  Regardless, Mr. Brown was booked, photographed, and

4   fingerprinted on felony child stealing charges, creating a felony

5   arrest record that was disseminated to various criminal background

6   databases.  Id.  Mr. Brown was released within hours of his arrest,

7   and no charges were filed.  Id.  ¶ 18.  He contends that his

8   reputation as a retired peace officer and private investigator has

9   been harmed and that he has suffered financial loss as a result of

10  his arrest.  Id.

11      Around March 10, 2012 -- a month after Mr. Brown's arrest --

12  Ms. Brown was arrested at her home.  Id. ¶ 19.  According to

13  Plaintiffs, six police officers used excessive force to subdue and

14  arrest Ms. Brown, who did not resist.  Id.  She was then jailed in

15  a glass holding cell for two days and mocked by Del Norte County

16  jail staff.  Id.  Plaintiffs also allege that Ms. Brown was denied

17  medication for various medical conditions during this time, and

18  that Defendant Alexander and County jail staff demeaned her by

19  throwing a party to celebrate her arrest.  Id.

20      Plaintiffs assert that as a result of Ms. Brown's arrest, Jane

21  Does 1 and 2 were taken into CWS custody and placed in a foster

22  home.  Id. ¶ 2.  This foster home was apparently run by a close

23  friend of Mr. Crockett's girlfriend, who allowed Mr. Crockett

24  access to the girls even though Ms. Brown was denied visitation.

25  Id.

26      Around June 15, 2012, Defendants Cain and Salatnay removed

27  Jane Does 1 and 2 from the foster home and transferred primary

28  custody to Mr. Crockett.  Id. ¶ 21.  Ms. Brown was given only

**United States District Court**
For the Northern District of California

1   supervised visitation, and Mr. Crockett allegedly was able to

2   approve the court-appointed monitors personally.  Id.  Defendant

3   Cain was one such monitor.  See id.  In August 2012, she attempted

4   to report one of the daughters' statements that someone they met at

5   Mr. Crockett's house was going to take them away to Mexico.  Id. ¶

6   22.  CWS apparently "laughed at her and refused to document the

7   report," leading Defendant Cain to report the matter to a federal

8   agency.  Id.

9       On or about January 17, 2013, Arlene Kasper, a non-defendant

10  visitation monitor, reported seeing Defendant Salatnay (the

11  assigned case worker) interview Jane Does 1 and 2, who told

12  Defendant Salatnay of Mr. Crockett's history of molestations.  Id.

13  ¶ 23.  Plaintiffs allege that Ms. Kasper saw Defendant Salatnay

14  examine Jane Doe 1's genitals and state that "there's something

15  here."  Id.  Plaintiffs report that Ms. Kasper asked Defendant

16  Salatnay what she would do at that point, in response to which

17  Defendant Salatnay "said that there was nothing she could do, as

18  she had been told by her supervisor, [Defendant Cain], that no

19  matter what Jane Doe 1 or 2 said, [Defendant Salatnay] was to come

20  back with either an inconclusive or unsubstantiated report.

21  [Defendant Salatnay] said also that her hands were tied because of

22  her supervisor [Defendant Cain]."  Id.

23      Later, around February 21, 2013, Jane Does 1 and 2 were again

24  taken into custody by CWS and placed into a foster home pursuant to

25  California Welfare and Institutions Code section 300, which grants

26  the juvenile court jurisdiction over children adjudged to be

27  dependents.  Id. ¶ 24; Cal. Welf. & Inst. Code § 300.  CWS

28  documented Jane Doe 2's January 17, 2013, report of molestation by

**United States District Court**
For the Northern District of California

Mr. Crockett.  Id. ¶ 24.  CWS also stated that it would not return custody of Jane Does 1 and 2 to Ms. Brown, because she had created stress on the children by reporting abuse and molestation.  Id. Around March 5, 2013, Defendant Salatnay took Jane Does 1 and 2 to Napa County, where they were interviewed for a half-hour each by a male detective.  Id. ¶ 25.  The girls apparently refused to disclose molestation or abuse allegations, so CWS (through Defendants Cain and Salatnay) decided to return the girls to Mr. Crockett's custody, apparently "without court authorization and in spite of the fact that a [Welfare and Institutions Code section 300] petition hearing had been held and a subsequent jurisdictional hearing set for the following week."  Id. ¶ 25.  The girls were back in Mr. Crockett's custody around March 8, 2013.  Id. ¶ 26. After being denied access to the girls entirely, Ms. Brown was then allowed minimal, supervised visits.  Id.  A week later, Defendant Salatnay provided a jurisdictional report to the juvenile court in which she allegedly "intentionally lied and misled the court, arguing that [Jane Does 1 and 2] should be left in [Mr. Crockett's] custody."  Id.

C.      **State Court Proceedings**

State court proceedings regarding custody, dependency, and visitation are apparently ongoing in the Del Norte County Superior Court.  The original judge in that case, Judge Follett, awarded Mr. Crockett primary custody of Jane Does 1 and 2 on January 9, 2012. County RJN Ex. A.  (He also issued the Warrant, discussed above, on February 8, 2012.)  After Judge Follett issued the Warrant, Ms. Brown moved to disqualify him from the case, and on July 13, 2012, the judge assigned to the disqualification motion, Judge Morrison,

denied it.  _Id._ Ex. C.  On February 25, 2013, the County of Del Norte filed petitions for juvenile dependency on behalf of Jane Does 1 and 2, per California Welfare and Institutions Code section 300.  _Id._ Exs. D, E.  At a February 26, 2013, the court ordered the children detained.  _Id._ Ex. F.  On March 15, 2013, at a jurisdictional hearing, Judge LaCasse (apparently now assigned to the case) ordered the children returned to Mr. Crockett, with a plan for family reunification with Ms. Brown.  _Id._ Ex. G.  On March 22, 2013, at a dispositional hearing, Judge LaCasse ordered all visitation with the maternal grandparents to cease.  _Id._ Ex. H.  On April 12, 2013, Jane Does 1 and 2 were declared dependents of the state juvenile court, with an interim review hearing calendared for June 28, 2013.  _Id._ Ex. I.  On April 24, 2013, Ms. Brown appealed the jurisdictional order, the dispositional order, and the order declaring the children dependents.  _Id._ Ex. J.  The court held an interim review session on May 10, 2013.  _Id._ Ex. L.  These proceedings are all apparently ongoing, though the parties refer to no other actions.

> **D.   Plaintiffs' Causes of Action**

Based on the facts alleged above, Plaintiffs' theory is that the County Defendants conspired to protect Defendant Crockett from law enforcement scrutiny, thereby contributing to the infringement of Plaintiffs' constitutional rights and violations of various state law claims.  Plaintiffs accordingly assert the following causes of action against the Defendants, seeking only monetary damages:

> 1. Conspiracy, as to Defendants Alexander, Wilson, Fleshman, Cain, and Salatnay;

**United States District Court**
For the Northern District of California

2. False imprisonment and false arrest, as to Defendants Alexander, Wilson, and Fleshman;

3. Defamation, as to Defendants Wilson, Fleshman, Alexander, Cain, and Salatnay;

4. Abuse of process, as to Defendants Alexander, Wilson, Fleshman, Cain, and Salatnay;

5. Intentional infliction of emotional distress ("IIED"), as to Defendants Alexander, Wilson, Fleshman, Cain, Salatnay, and Crockett;

6. Negligence, as to all Defendants;

7. Vicarious responsibility, as to County;

8. Violations of civil rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution, per 28 U.S.C. §§ 1983 and 1988, as to all Defendants except Crockett; and

9. Child sex abuse and neglect, as to Defendant Crockett alone.

Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6), asserting a variety of theories for dismissing or, alternatively, staying this action.[2]  Defendant Crockett filed his own brief, discussed separately where appropriate, though on many points he joins the County Defendants' brief.

III. **LEGAL STANDARD**

A.   **Rule 12(b)(1)**

When a defendant submits a motion to dismiss under Federal

---

[2] Defendant Crockett also moves for a more definite statement under Rule 12(e), but because the Court grants his motion to dismiss, his Rule 12(e) motion is denied as moot.

**United States District Court**
For the Northern District of California

1  Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of

2  establishing the propriety of the court's jurisdiction.  <u>See</u>

3  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994).  As a

4  court of limited jurisdiction, "[a] federal court is presumed to

5  lack jurisdiction in a particular case unless the contrary

6  affirmatively appears."  <u>Stock West, Inc. v. Confederated Tribes</u>,

7  873 F.2d 1221, 1225 (9th Cir. 1989).  A Rule 12(b)(1)

8  jurisdictional attack may be facial or factual.  <u>White v. Lee</u>, 227

9  F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In a facial

10  attack, the defendant challenges the basis of jurisdiction as

11  alleged in the complaint; however, in a factual attack, the

12  defendant may submit, and the court may consider, extrinsic

13  evidence to address factual disputes as necessary to resolve the

14  issue of jurisdiction, and no presumption of truthfulness attaches

15  to the plaintiff's jurisdictional claims.  <u>Safe Air for Everyone v.</u>

16  <u>Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004); <u>Thornhill Pub. Co. v.</u>

17  <u>Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979).  In

18  any event, federal courts are obliged to thoroughly examine their

19  own jurisdiction.  <u>United States v. Hays</u>, 515 U.S. 737 (1995).

20  **B.**   **<u>Rule 12(b)(6)</u>**

21      A motion to dismiss under Federal Rule of Civil Procedure

22  12(b)(6) "tests the legal sufficiency of a claim."  <u>Navarro v.</u>

23  <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

24  on the lack of a cognizable legal theory or the absence of

25  sufficient facts alleged under a cognizable legal theory."

26  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

27  1988).  "When there are well-pleaded factual allegations, a court

28  should assume their veracity and then determine whether they

**United States District Court**
For the Northern District of California

1 plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>
2 <u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court
3 must accept as true all of the allegations contained in a complaint
4 is inapplicable to legal conclusions.  Threadbare recitals of the
5 elements of a cause of action, supported by mere conclusory
6 statements, do not suffice." <u>Id.</u> (citing <u>Bell Atl. Corp. v.</u>
7 <u>Twombly</u>, 550 U.S. 544, 555 (2007)).  The allegations made in a
8 complaint must be both "sufficiently detailed to give fair notice
9 to the opposing party of the nature of the claim so that the party
10 may effectively defend against it" and "sufficiently plausible"
11 such that "it is not unfair to require the opposing party to be
12 subjected to the expense of discovery." <u>Starr v. Baca</u>, 652 F.3d
13 1202, 1216 (9th Cir. 2011).

14

15 **IV.   DISCUSSION**

16     **A.   <u>Younger Abstention</u>**

17     The doctrine of <u>Younger</u> abstention comes from the case <u>Younger</u>
18 <u>v. Harris</u>, 401 U.S. 37 (1971).  In <u>Younger</u>, the Supreme Court held
19 that federal courts should not intervene in ongoing state criminal
20 proceedings except under extraordinary circumstances.  <u>Id.</u> at 43-
21 44.  This is because "interference with a state judicial proceeding
22 prevents the state not only from effectuating its substantive
23 policies, but also from continuing to perform the separate function
24 of providing a forum competent to vindicate any constitutional
25 objections interposed against those policies." <u>Huffman v. Pursue,</u>
26 <u>Ltd.</u>, 420 U.S. 592, 604 (1975).  The Supreme Court has since
27 expanded this principle to civil matters for damages, as opposed to
28

United States District Court
For the Northern District of California

injunctive relief alone,[3] and developed a three-part threshold
inquiry into whether federal courts should abstain from interfering
with state court proceedings.  See Middlesex Cnty. Ethics Comm. v.
Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).  The federal
court must ask (1) whether the state hearings at issue constitute
an ongoing state judicial proceeding; (2) whether the proceedings
implicate important state interests; and (3) whether the state
proceedings provide an adequate opportunity to raise constitutional
challenges.  Id.; Gilbertson v. Albright, 381 F.3d 965, 973 (9th
Cir. 2004) (applying Middlesex).  As a "fourth factor," if the
three threshold elements are satisfied, the policies behind the
Younger doctrine must be implicated by the actions requested of the
federal court.  AmerisouceBergen Corp. v. Roden, 495 F.3d 1143,
1149 (9th Cir. 2007).

     In some cases, federal courts have applied the Younger
doctrine to dismiss or stay cases implicating state court juvenile
or family division proceedings.  For example, in H.C. v. Koppel,
203 F.3d 610, 613 (9th Cir. 2000), the Ninth Circuit affirmed a
district court's dismissal of a case that asked the district court
to vacate existing state court orders and enjoin future state court
proceedings.  The Ninth Circuit held that such requests were not
suitable for the federal judiciary, per Younger's strong federal
policy against federal court interference with pending state
proceedings.  Id. at 613-14.  In Young v. Schwarzenegger, No. C-10-
03594-DMR, 2011 WL 175906 (N.D. Cal. Jan. 18, 2011), this Court

_____
[3] The parties dispute whether the fact that Plaintiffs sue for
damages should implicate Younger, but as explained here, settled
precedent shows that suits for damages implicate stays under
Younger, but not full abstention.

dismissed a case on <u>Younger</u> grounds because the plaintiff asked the Court for a declaratory judgment that certain sections of the California Family Code were unconstitutional, and for injunctive relief enjoining enforcement of those sections.  The Court held that <u>Younger</u> principles applied because the plaintiff was, as in <u>Koppel</u>, directly asking the Court to interfere with ongoing state proceedings in which the state had a compelling interest and there were opportunities to raise federal constitutional challenges.  <u>Id.</u> at *3-4.

However, in <u>Lahey v. Contra Costa County Department of Children and Family Services</u>, No. C-01-1075 MJJ, 2004 WL 2055716 (N.D. Cal. Sept. 2, 2004), this Court declined to apply the <u>Younger</u> doctrine in a case that brought Section 1983 claims based on constitutional violations allegedly springing from the Contra Costa County Department of Children and Welfare Services' separation of children from their custodial parents and placement of children in foster care (among other things).  Judge Jenkins found that the state juvenile and family courts, being of limited jurisdiction, were inappropriate fora for resolution of the plaintiffs' constitutional claims.  <u>Id.</u> at *11-12.  <u>Younger</u> was therefore inapplicable.  <u>Id.</u>

Defendants argue that the Court should abstain from hearing this case, or at least stay it.  According to Defendants, Plaintiffs' Section 1983 claim as to the First and Fourteenth Amendments -- the only federal claims in this case -- counsel <u>Younger</u> Abstention because (1) dependency, custody, and visitation proceedings are ongoing in the Del Norte County Superior Court; (2) child custody proceedings implicate a compelling state interest in

**United States District Court**
For the Northern District of California

15

protecting children and families; and (3) Plaintiffs have an
adequate opportunity to present federal constitutional claims in
the ongoing state action.  County MTD at 11-14.  Accordingly,
Defendants ask the Court to abstain from hearing Plaintiffs'
Section 1983 claims as to the First and Fourteenth Amendments, and
to stay the entire action under the Court's inherent authority to
manage its cases in an orderly and efficient manner.  Id. at 14-15.

The Court finds that Younger abstention does not apply in this
case.  Although the state undisputedly has a strong interest in
matters concerning family integrity and the well-being of children,
see Moore v. Sims, 442 U.S. 415, 435 (1979), the Court finds that
the two other prongs of the three-part Middlesex test have not been
satisfied in this case, and the policies of the Younger doctrine
are not implicated.

First, the ongoing state proceedings are (so far as the Court
can tell from the parties' sparse explanations of this matter) not
at all related to Plaintiffs' present claims.  The state
proceedings, apparently conducted in family and juvenile court,
concern custody, visitation, and dependency.  See County RJN Exs.
A-L.  Although the record on these points is not entirely clear,
the parties' state court disputes appear to relate exclusively to
those matters, and while some of Plaintiffs' federal claims relate
in certain ways to those proceedings, this case is profoundly
different.  It involves different parties, completely separate
facts, and claims that do not implicate the state proceedings
themselves.  See Lahey, 2004 WL 2055716, at *10 (finding
similarly).  It is primarily a civil rights case against the County
Defendants for actions taken against Mr. and Ms. Brown, based on

**United States District Court**
For the Northern District of California

1   the facts arising long after the family dispute in state court.  As

2   pled, Plaintiffs' First and Fourteenth Amendment claims are

3   unrelated to the state proceedings.  The Court is not asked to

4   resolve a challenge to those proceedings, and the factual issues

5   underpinning the Section 1983 claim do not appear to require the

6   Court to contradict or overrule the family or juvenile courts.  See

7   Gilbertson, 381 F.3d at 982-83.  The Court finds that the first

8   Younger prong is not met.

9       Second, any ongoing proceedings must also "provide the

10   plaintiff an adequate opportunity to litigate federal claims."  San

11   Remo Hotel v. City & Cnty. of S.F., 145 F.3d 1095, 1103 (9th Cir.

12   1095).  As this Court has found in a similar case, the family and

13   juvenile courts "are of limited jurisdiction and are not equipped

14   to rule on claims arising from constitutional due process

15   considerations."  Lahey, 2004 WL 2055716, at *11; accord LaShawn A.

16   ex rel. Moore v. Kelly, 990 F.2d 1319, 1322-23 (D.C. Cir. 1993)

17   (holding, because the D.C. family division dealt with a limited

18   array of issues concerning child neglect and parental rights,

19   "[n]one of [the state court] proceedings is an appropriate forum .

20   . . . [T]hese proceedings are not suitable arenas in which to

21   grapple with broad issues external to the parent-child

22   relationship.").  Further, unlike cases in which this Court has

23   abstained from adjudicating a plaintiff's claims relating to family

24   or juvenile court proceedings, Plaintiffs' claims now at issue do

25   not "reach to the very heart of the Juvenile Court's responsibility

26   and core competency, viz., determining the best program of services

27   and placement for each individual child."  Laurie Q. v. Contra

28   Costa Cnty., 304 F. Supp. 2d 1185, 1207 n.16 (N.D. Cal. 2004).

This cuts against a finding that Plaintiffs would have the
opportunity to raise their claims in the state proceedings, even
assuming the first prong had been met here.  While Plaintiffs could
indeed raise constitutional challenges to the family or juvenile
court's custody or visitation decisions in the state proceedings,
those proceedings are wholly unrelated to the core of Plaintiffs'
case against the County Defendants.

The County Defendants are correct that the Court must consider
only whether Plaintiffs had an "opportunity to present" federal
claims in the state proceedings; that the Court may not presume
that state courts will not safeguard federal constitutional rights;
and that in cases in which the other Younger prongs are met, it is
the plaintiff's burden to show that a procedural bar would prohibit
the state court from resolving a constitutional claim.  County MTD
at 13 (citing, among other pertinent cases, Pennzoil Co. v. Texaco,
Inc., 481 U.S. 1, 16 (1987); Moore, 442 U.S. at 436; Dubinka v.
Super. Ct., 23 F.3d 218 (9th Cir. 1994)).  However, the Court found
that the first Younger prong is not met in this case, so Plaintiffs
need not raise the issue of a bar, even if one existed, and even if
there were an opportunity to raise their federal claims below.[4]
See, e.g., Dubinka, 23 F.3d at 223; cf. Lahey, 2004 WL 2055716, at
*10.

Finally, as to the "fourth prong" of Younger, Plaintiffs'
claims relate to the County Defendants' allegedly "trumping up"
claims against Mr. and Ms. Brown, violating their constitutional

---

[4] Of course, if the parties later present facts that ongoing state
proceedings sufficiently related to this matter and allowing
plaintiffs to raise the same constitutional claims, they could file
a later motion on this point.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    rights and those of Jane Does 1 and 2.  While findings and orders

2    from the state proceedings may eventually be relevant to this case

3    -- e.g., to establish what custodial rights Mr. and Ms. Brown have,

4    vis a vis their constitutional claims, or whether any abuse or

5    neglect had actually occurred as a predicate of a constitutional or

6    state cause of action -- the Court does not find that its

7    application of those facts or resolution of Plaintiffs' claims

8    would cause the Court to interfere with any state proceedings at

9    all.  Accordingly, even if the threshold prongs of Younger analysis

10   were met here, the Court does not find that resolution of

11   Plaintiffs' claims would enjoin (or have the practical effect of

12   enjoining) the state proceedings.  AmerisourceBergen Corp., 495

13   F.3d at 1149 (citing Gilbertson, 381 F.3d at 978).  If at some

14   point this case's resolution requires awaiting a state court

15   decision that bears on Plaintiffs' claims, and if indeed such

16   decisions are forthcoming, the parties may request a stay when it

17   is appropriate to do so.

18       A stay under Younger is therefore inappropriate, so the Court

19   proceeds to evaluate Defendants' other arguments.

20       **B.   <u>Plaintiffs' Fourth Amendment Claims</u>**

21       Regardless of the Court's findings as to the Younger doctrine,

22   the County Defendants specifically challenge Plaintiffs' Fourth

23   Amendment claims under Section 1983.  Plaintiffs Mr. and Ms. Brown

24   allege that the County Defendants deprived them of their rights to

25   "be free from unreasonable search and seizure."  FAC ¶¶ 80-82.  As

26   the County Defendants characterize Plaintiffs' claim -- and

27   Plaintiffs do not disagree -- the claim is premised on Defendants

28   Alexander, Wilson, and Fleshman allegedly conspiring to omit Mr.

**United States District Court**
For the Northern District of California

Brown's statements from the Warrant affidavit, resulting in the Warrant having issued without probable cause and rendering Mr. and Ms. Brown's subsequent arrests violations of their Fourth Amendment rights.  See County MTD at 16-17; County Opp'n at 4-5.  Plaintiffs also claim that Ms. Brown's arrest was conducted with excessive force.

As to Plaintiffs' claims based on the Warrant: if a person knowingly or with reckless disregard for the truth includes material false statements or omits material facts in an affidavit submitted in support of a warrant application, he or she may be liable under Section 1983 for a Fourth Amendment violation.  Franks v. Delaware, 438 U.S. 154, 157 (1978); Butler v. Elle, 281 F.3d 1014, 1024-26 (9th Cir. 2002); Cassette v. King Cnty., 625 F. Supp. 2d 1084, 1087 (W.D. Wash. 2008).  This is called a Franks claim, after the Supreme Court case.  To support a Section 1983 claim on this theory, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.  Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002).  "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause."  Ewing v. City of Stockton, 588 F.3d 1218, 1224 (9th Cir. 2009).

The County Defendants argue that Plaintiffs' Franks claim should be dismissed.  First, they contend that the complaint does not identify the arrest warrant affiant or the allegedly exculpatory evidence omitted from the probable cause statement.  Second, they claim that Plaintiffs' allegations of false arrest as

**United States District Court**
For the Northern District of California

1    to Defendant Fleshman fail to allege that the Warrant was facially

2    invalid, and in any event, Defendant Fleshman is subject to

3    qualified immunity because of that failure to plead the Warrant's

4    facial invalidity.  County MTD at 17-18.

5         Separately from their arguments on the <u>Franks</u> claim, the

6    County Defendants argue that Plaintiffs' allegations as to

7    excessive force in the arrest of Ms. Brown cannot support a Fourth

8    Amendment claim because none of the County Defendants are named as

9    arresting officers, and the bare assertion of "excessive force"

10   fails to meet federal pleading standards.

11        Under seal, Plaintiffs attached to their opposition brief

12   copies of Mr. Brown's letter to Defendant Alexander, as well as the

13   Warrant and the declaration of probable cause.  (They did not need

14   to do so to support their claim at this stage, and the Court need

15   not take notice of their materials to find Plaintiffs' allegations

16   sufficient.)  Plaintiffs contend that the complaint sufficiently

17   alleges that Defendants Alexander, Wilson, and Fleshman worked

18   together to draft the Warrant affidavit and submit it to the

19   magistrate judge, omitting from the affidavit and any other

20   statements the fact that Mr. Brown had sent the proper notice to

21   the DA's office and the County Defendants per California Penal Code

22   section 278.7.  FAC ¶¶ 15-17.

23        The Court finds that Plaintiffs sufficiently plead a Fourth

24   Amendment claim.  Plaintiffs allege that Defendants Alexander,

25   Wilson, and Fleshman filed an affidavit with the magistrate judge,

26   alleging that Mr. and Ms. Brown had kidnapped Jane Does 1 and 2,

27   and that their whereabouts were unknown.  But according to

28   Plaintiffs, Mr. Brown gave notice to the County Defendants, per the

**United States District Court**
For the Northern District of California

1   California Penal Code, that he was taking the children out of

2   jurisdiction.  The County Defendants would therefore have been on

3   notice that an exception applied to Mr. and Ms. Brown taking the

4   children out of the state.  Moreover, the statement in the

5   affidavit that the County Defendants had no knowledge of the

6   children's whereabouts would be plainly false, given this notice.

7   Under the circumstances, Plaintiffs have pointed to both an

8   omission and an outright falsity, both of which are material to

9   findings of probable cause because the magistrate's decision on

10  whether to grant the warrant application would plainly depend on

11  whether a kidnapping under the California Penal Code had occurred.

12  Part of this consideration would necessarily have involved whether

13  a legal exception applied.

14      The Court does not find the County Defendants' reply arguments

15  on this point persuasive.  They would hold Plaintiffs' pleadings to

16  a much higher standard than the law requires.  See Rutledge v.

17  Cnty. of Sonoma, No. 07-4272 CW, 2008 WL 2676578, at *7 (N.D. Cal.

18  July 1, 2008) (applying standard set out above); Galbraith v.

19  County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002)

20  (heightened pleading standard does not apply to constitutional tort

21  claims).  Moreover, contrary to the County Defendants' arguments,

22  the court in Rutledge dismissed a plaintiff's Franks claim against

23  a detective because the plaintiff did not identify a false

24  statement or omission in a warrant affidavit that the defendant

25  drafted -- not because the plaintiff had to plead the Franks claim

26  to a heightened standard.  2008 WL 2676578, at *7.  The court in

27  that case did not require a heightened pleading standard, and in

28

1  fact could not have done so.[5]  <u>Galbraith</u>, 307 F.3d at 1126.

2      Further, contrary to the County Defendants' position,

3  Plaintiffs need not identify the affiant specifically because they

4  allege that Defendants Wilson, Alexander, and Fleshman worked

5  together to ensure that the relevant information was to be omitted

6  from the affidavit.  According to the pleadings, each of these

7  Defendants knew of the omitted material but coordinated to ensure

8  that it did not appear in the probable cause affidavit.

9  Plaintiffs' allegations as to Section 1983 suggest that the County

10  Defendants are jointly liable for the constitutional tort.

11      As to Plaintiffs' false arrest allegations, which are

12  consonant with Plaintiffs' claims for unreasonable seizure under

13  the Fourth Amendment, the County Defendants argue that Plaintiffs'

14  allegations as to Mr. Brown's arrest fail because Defendant

15  Fleshman, who arrested Mr. Brown, has qualified immunity.  County

16  MTD at 17.  This contention is based on the County Defendants'

17  position that the complaint fails to allege that the Warrant is

18  invalid.  As noted above, the Court does not find that to be the

19  case, though the Court addresses qualified immunity more fully

20  below.

21      As to Ms. Brown's allegations of excessive force under the

22  Fourth Amendment, FAC ¶ 19, the County Defendants argue that her

23  claim should be dismissed because none of the County Defendants are

24  _____

25  [5] County Defendants' remaining authority to the contrary is
    inapposite, because it concerns cases arising under different
    standards of review or different statutes.  <u>See Olsen v. Idaho</u>

26  <u>Board of Medicine</u>, 363 F.3d 916, 929 (9th Cir. 2004) (evaluating a
    Section 1985 claim); <u>Gilbrook v. City of Westminster</u>, 177. F3d 839,

27  856-67 (9th Cir. 1999) (evaluating a jury verdict on the
    "substantial evidence" standard, not a motion to dismiss); <u>Margolis</u>

28  <u>v. Ryan</u>, 140 F.3d 850, 853 (9th Cir. 1998) (affirming a district
    court's grant of summary judgment).

**United States District Court**
For the Northern District of California

1    identified as "arresting officers" and her bare assertion of

2    "excessive force" contravenes post-<u>Iqbal</u> pleading standards.

3    County MTD at 18.   Plaintiffs do not join this argument in their

4    opposition, and the Court finds Plaintiffs' allegations on this

5    point insufficient under Rule 8.   Plaintiffs provide no detail

6    regarding how Ms. Brown's arrest was conducted with excessive

7    force.   Those allegations are bare and legally conclusory, so the

8    Court DISMISSES them with leave to amend.   Plaintiffs' allegations

9    as to Ms. Brown's being arrested based on an unconstitutional

10   warrant are intact, and the County Defendants' motion to dismiss

11   Plaintiffs' Fourth Amendment Section 1983 claim on those grounds is

12   DENIED.

13       **C.**   <u>**Immunity**</u>

14          **i.**   <u>**Defendant Alexander's Immunity: State and Federal**</u>

15             **a.**   <u>**Federal Immunity**</u>

16       Separately, County Defendants argue that Defendant Alexander

17   should be dismissed from Plaintiffs' Section 1983 claim because he

18   "enjoys absolute immunity for decisions made within [his]

19   prosecutorial authority."   County MTD at 18 (citing <u>Radcliffe v.</u>

20   <u>Rainbow Const. Co.</u>, 254 F.3d 772, 777 (9th Cir. 2001)).

21       In determining immunity, the Court accepts the allegations in

22   complaint as true.   <u>See</u> <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 261

23   (1993).   Plaintiffs allege that Defendant Alexander worked with

24   Defendants Wilson and Fleshman to falsify the Warrant.[6]   However,

25   

26   [6] Plaintiffs include some argument in their opposition brief that
     Defendant Alexander omitted the same material information to obtain
27   a Protective Custody Warrant for Jane Does 1 and 2.  Plaintiffs'
     FAC contains no allegations based on that warrant, and the Court
28   does not evaluate it with respect to the County Defendants'
     immunity argument.

United States District Court
For the Northern District of California

contrary to Plaintiffs' opposition brief, Plaintiffs do not allege that Defendant Alexander was "directly responsible" for omission of the material information from the affidavit (e.g., that he was the affiant), only that he was closely involved with it and with Mr. Brown's subsequent arrest.  See FAC ¶¶ 15-17, 32.  The County Defendants contend that because of this lack of clarity and because Defendant Alexander was not the affiant -- Defendant Fleshman was -- Defendant Alexander is immune from Plaintiffs' Section 1983 claim.  Plaintiffs contend that Defendant Alexander was acting as a witness or in an investigative manner, and that he was providing legal advice to police, both instances in which absolute prosecutorial immunity does not apply.  County Opp'n at 5.

A prosecutor is protected by absolute immunity from liability for damages under Section 1983 "when performing the traditional functions of an advocate."  Kalina v. Fletcher, 522 U.S. 118, 131 (1997).  However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."  Buckley, 509 at 273.  Prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it."  Kalina, 522 U.S. 118 at 127 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).  Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or "investigative functions normally performed by a detective or police officer."  Id. at 126.  See also Burns v. Reed, 500 U.S. 478, 494-96 (1991).

To qualify as advocacy, a prosecutor's actions must be "intimately associated with the judicial phase of the criminal process."  Imbler v. Pachtman, 424 U.S. 409, 420 (1976); see also

Van de Kamp v. Goldstein, 555 U.S. 335, 345 (2009) (quoting
Imbler); Genzler v. Longanbach, 410 F.3d 630, 637 (9th Cir. 2005)
(same).  This can result in very broad immunity, attaching even
when a plaintiff's constitutional rights are violated.  Genzler,
410 F.3d at 637.  This is by design: anything less could "disserve
the broader public interest" in protecting a prosecutor's ability
to exercise independent judgment and advocate vigorously without
threat of retaliation by the numerous targets of a prosecutor's
prosecutions.  Id. (quoting Imbler).  "Thus, a prosecutor enjoys
absolute immunity from a suit alleging that he maliciously
initiated a prosecution, used perjured testimony at trial, or
suppressed material evidence at trial.  Imbler, 424 U.S. at 430.  A
prosecutor is also absolutely immune for direct participation in a
probable cause hearing, Burns, 500 U.S. at 491, and for preparing
and filing charging documents, Kalina, 522 U.S. at 130."  Id.
However, the Supreme Court has held that absolute immunity does not
apply to prosecutors who fabricate evidence "during the early stage
of the investigation" when "police officers and assistant
prosecutors were performing essentially the same investigatory
functions," Buckley, 509 U.S. at 273, to prosecutors who provide
legal advice to police that probable cause exists to arrest a
suspect, Burns, 500 U.S. at 491, or for personally attesting to the
truth of evidence in support of charging documents, Kalina, 522
U.S. at 130.

There is no bright line between advocacy and police-type
investigative work, though the Ninth Circuit has interpreted
Supreme Court precedent on this issue to turn on "whether a
prosecutor's investigation is of the type normally done by police,

**United States District Court**
For the Northern District of California

1   in which case prosecutors enjoy only qualified immunity, or whether

2   an investigation is bound up with the judicial process, thus

3   affording prosecutors the heightened protection of absolute

4   immunity." Genzler, 410 F.3d at 638.  Plaintiffs have alleged that

5   Defendant Alexander assisted the County Sheriff Defendants, Wilson

6   and Fleshman, in crafting an affidavit of probable cause for the

7   Warrant, and then in conducting the arrest of Mr. Brown.  Such

8   investigative work can be done in a quasi-judicial capacity, and

9   would therefore be subject to absolute immunity, when -- for

10  example -- the prosecutor does so in organizing, evaluating, and

11  marshaling evidence in preparation for trial, as opposed to when

12  the prosecutor engages in police-like activity of acquiring

13  evidence in advance of a prosecution.  See Genzler, 410 F.3d at 639

14  (citing Buckley, 509 U.S. at 273; and Barbera v. Smith, 836 F.2d

15  96, 100 (2d Cir. 1987)).

16      The timing of investigative work is not dispositive in cases

17  like this one, but applying the Supreme Court's analysis, the Court

18  finds that Plaintiffs' allegations about Defendant Alexander, taken

19  as true at this stage, present him as acting in an investigative

20  capacity not related to his core advocacy function.  See id.

21  Defendant Alexander is alleged to have aided in analyzing (and then

22  omitting) evidence related to a Warrant affidavit, and then to have

23  provided specific legal advice to a police officer as to the future

24  filing of criminal charges against Mr. Brown.  Specifically,

25  Defendant Alexander is alleged to have been on notice of Mr.

26  Brown's letter under the California Penal Code, and to have had a

27  conversation with at least one of the Plaintiffs regarding whether

28  an exception to California's kidnapping law applied in this case.

So far as he incorporated these facts into his decision to work with Defendants Wilson and Fleshman to submit the Warrant affidavit, this work was not part of his quasi-judicial advocacy role, and he is not entitled to absolute immunity for these activities. Id.

The County Defendants contend that Defendant Alexander can only lose prosecutorial immunity if the complaint alleges that he was the Warrant affiant. County Reply at 6 (citing Kalina, 522 U.S. at 123-25). They misread Kalina. At no point does that case draw such a clear line. In fact, it reinforces the Supreme Court's long-standing jurisprudence that analysis of whether absolute immunity attaches must be functionally based on whether the prosecutor was acting as a witness (e.g., in an investigative fashion) or in his capacity as an advocate. See Kalina, 522 U.S. at 123-25, 129-30. In Kalina, the Supreme Court affirmed the Ninth Circuit's holding that a prosecutor was not entitled to absolute immunity because she had certified false facts in attesting to facts recited in a "Certification for Determination of Probable Cause." See id. at 130-31. The Supreme Court's analysis did not hinge only on the fact that the prosecutor was also the affiant, though. Rather, it was critical that the prosecutor was in that case performing the function of a witness or investigator, not that of an advocate. Id. at 131 (citing Imbler, 424 U.S. at 421; Buckley, 509 U.S. at 273).[7] Again, in this case, the Court finds

---

[7] The County Defendants similarly misread their other supporting authority, all of which applies essentially the same framework described above in cases where a prosecutor was, for example, moving for a bench warrant. In those cases, courts have held that the prosecutor acts in a traditional advocate's capacity because he is applying law to facts, not acting as an investigator. See Waggy

that Defendant Alexander was operating in a witness or
investigative capacity during the relevant times.  Later facts may
prove this false, but at the pleading stage, Plaintiffs'
allegations survive the County Defendants' motion to dismiss for
prosecutorial immunity.

### 1.   **Qualified Immunity**

Since Defendant Alexander is not entitled to absolute
immunity, the Court must determine whether qualified immunity
attaches.  Kalina, 522 U.S. 118 at 126.  The doctrine of qualified
immunity protects government officials "from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982).  Qualified immunity is "immunity from suit
rather than a mere defense to liability."  Mitchell v. Forsyth, 472
U.S. 511, 526 (1985).  It protects from suit all but the plainly
incompetent or those who knowingly violate the law.  Malley v.
Briggs, 475 U.S. 335, 341 (1986).  The relevant inquiry for a claim
under Section 1983 is whether (1) the facts show "the officer's
conduct violated a constitutional right"; and (2) the right at
issue was "clearly established" at the time of the officer's
allegedly wrongful conduct.  Saucier v. Katz, 533 U.S. 194, 201
(2001).  Trial courts may exercise discretion in deciding which
prong to address first.  See Pearson v. Callahan, 555 U.S. 223, 236
(2009).

The Court finds that Defendant Alexander is not entitled to

---

v. Spokane Cnty. Wash., 594 F.3d 707, 712-13 (9th Cir. 2010).  That
is not what is at stake here.

1  qualified immunity as to the Fourth Amendment claim.  First,

2  Plaintiffs have sufficiently alleged violations of their Fourth

3  Amendment rights.  Second, those rights were "clearly established"

4  at the time of Defendant Alexander's alleged misconduct, because

5  clearly established law would have put Defendant Alexander on

6  notice that his conduct violated the Constitution: Plaintiffs have

7  alleged a prima facie <u>Franks</u> claim, which is a longstanding

8  constitutional doctrine, not an undecided issue of which a district

9  attorney might reasonably have been unaware.  <u>See, e.g.</u>, <u>Pearson</u>,

10  555 U.S. at 244-45.

11      At this stage of litigation, the Court therefore declines to

12  dismiss Plaintiffs' Section 1983 claims against Defendant

13  Alexander.[8]

14              **b.   <u>State Immunity</u>**

15      The County Defendants further argue that Defendants Alexander,

16  Cain, and Salatnay are immune, by state statute, to all of

17  Plaintiffs' state law claims for conspiracy, defamation, abuse of

18  process, IIED, negligence, and, additionally as to Defendant

19  Alexander alone, false imprisonment and false arrest.  <u>Id.</u> at 21-

20  22.  This argument is based on California Government Code section

21  821.6, which reads, "A public employee is not liable for injury

22  caused by his instituting or prosecuting any judicial or

23  administrative proceeding within the scope of his employment, even

24  if he acts maliciously and without probable cause."  "For purposes

25  of this immunity provision, investigations are deemed to be part of

26  the judicial and administrative proceedings." <u>Strong v. State</u>, 201

27  _____

28  [8] As the parties seem to agree, the only live Section 1983 claim
    against Defendant Alexander pertains to Plaintiffs' Fourth
    Amendment claims.

**United States District Court**
For the Northern District of California

Cal. App. 4th 1439, 1461 (Cal. Ct. App. 2011); accord Blankenhorn v. City of Orange, 485 F.3d 463, 488 (9th Cir. 2007). This immunity has repeatedly been applied to social workers' conduct during investigations. See Guzman v. Cnty. of Alameda, No. C 10-2250 MEJ, 2010 WL 3702652, at *8 (N.D. Cal. Sept. 16, 2010).

The County Defendants contend that the alleged acts and omissions of Defendants Cain and Salatnay all involve their investigations of claims of abuse against Jane Does 1 and 2. County MTD at 21-22. They therefore ask the Court to dismiss Plaintiffs' claims for conspiracy, defamation, abuse of process, IIED, and negligence claims as to Defendants Cain and Salatnay. Id. They restate their other arguments as to Defendant Alexander's immunity in this context. Id. Plaintiffs respond that California's statutory immunity does not extend to actions following social workers' "decision to make a response to an allegation of child abuse." County Opp'n at 7. They contend that Defendants Cain, Salatnay, and Alexander all exceeded their statutory immunity grant by taking actions following their investigative activities. Id.

The Court finds that Defendants Cain, Salatnay, and Alexander are immune from Plaintiffs' state law claims per California Government Code section 821.6's grant of immunity. Plaintiffs contend that section 821.6 immunity does not extend to actions taken after an investigation, but "California courts have not embraced this distinction." See Ingram v. City of S.F. Police Dep't, No. 13-0224 CW, 2013 WL 3961137, at *3 (N.D. Cal. July 29, 2013) (citing Scannell v. Cnty. of Riverside, 152 Cal. App. 3d 596, 609 (Cal. Ct. App. 1984) (dismissing tort claim against police

31

**United States District Court**
For the Northern District of California

1  officers and county prosecutors for actions taken during and after

2  an investigation into plaintiff's conduct)).   None of Plaintiffs'

3  allegations refer to actions taken outside Defendants'

4  investigative work regarding Plaintiffs.   While federal immunity

5  does not attach to Defendant Alexander's investigative conduct,

6  state immunity does not appear to be so limited.   See id.   However,

7  it does not attach to Plaintiffs' claim for false arrest and false

8  imprisonment, which survives.   Asgari v. City of L.A., 15 Cal. 4th

9  744, 753 (Cal. 1997) (statutory immunity does not apply to claims

10  for false arrest or false imprisonment per California Government

11  Code section 820.4); Cal. Gov't Code § 820.4 ("Nothing in this

12  section exonerates a public employee from liability for false

13  arrest or false imprisonment.").

14      Plaintiffs' state law claims against Defendants Alexander,

15  Cain, and Salatnay are DISMISSED with prejudice, except as to

16  Plaintiffs' false arrest claim against Defendant Alexander, because

17  the Court finds that amendment would be futile.

18      **D.   Plaintiffs' Monell Claim Against the County of Del Norte**

19      Plaintiffs' Section 1983 claim against the County is called a

20  Monell claim, after Monell v. N.Y.C. Dep't of Social Servs., 436

21  U.S. 658, 689 (1978).   Monell claims must be based on actions

22  pursuant to official municipal policy that caused a constitutional

23  violation.   Id.   To state a Monell claim for municipal liability

24  under Section 1983, a plaintiff must allege (1) possession of a

25  constitutional right of which she was deprived; (2) the existence

26  of a municipal policy; (3) that the policy "amounts to deliberate

27  indifference to the plaintiff's constitutional right"; and (4) that

28  the policy was the "moving force" behind the constitutional

32

**United States District Court**
For the Northern District of California

1   violation.  <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 868 (9th

2   Cir. 2005).  The County Defendants argue that because Plaintiffs do

3   not plead the existence of any basis for <u>Monell</u> liability.  County

4   MTD at 19-20.  Plaintiffs concede that they have not alleged such,

5   requesting leave to amend to correct this deficiency.  County Opp'n

6   at 6.  Accordingly, the Court DISMISSES this claim with leave to

7   amend.

8        **E.   State Law Conspiracy[9]**

9        The County Defendants argue that the Court should dismiss

10  Plaintiffs' cause of action for conspiracy against the County

11  Defendants because (1) a conspiracy cannot be alleged as a tort

12  separate from the underlying wrong it is organized to achieve, and

13  (2) the intra-corporate conspiracy doctrine precludes a cause of

14  action for civil conspiracy between employees of a corporation or

15  municipality when the defendants are acting within the course and

16  scope of their employment.  County MTD at 20-21.  It does not

17  matter that some of the alleged co-conspirators are entitled to

18  legislative immunity in this case: "it is possible for one

19  defendant to be immune from liability, and yet another defendant to

20  be liable for conspiring with the immune party." <u>Rabkin v. Dean</u>,

21  856 F. Supp. 543, 551 (N.D. Cal. 1994) (citing <u>Dennis v. Sparks</u>,

22  449 U.S. 24, 27 (1980)).  The County Defendants make no further

23  arguments as to the applicability of any of Plaintiffs' state law

24  claims to Defendants Wilson or Fleshman.  Plaintiffs dispute the

25

26  ────────────

27  [9] The County Defendants also argue that the Court should decline to
    hear Plaintiffs' state law claims under supplemental jurisdiction
    if the federal claims are dismissed.  Since the Court did not

28  dismiss Plaintiffs' federal claims, it declines to evaluate
    supplemental jurisdiction as to the County Defendants.

County Defendants' first argument against their conspiracy claim, but do not join the second.

Addressing the latter argument first, the Court clarifies for the parties that the cause of action at issue here is a state law conspiracy claim, not a claim under 42 U.S.C. § 1985, the federal statute that specifically concerns conspiracies to violate constitutional rights.  Plaintiffs assert that Defendants Alexander, Wilson, Fleshman, Cain, and Salatnay conspired to prevent investigation into Defendant Crockett and to trump up charges against Plaintiffs Mr. and Ms. Brown -- essentially the same facts that support Plaintiffs' Section 1983 claim, but couched in a somewhat different way.  Defendants' argument based on the intra-corporate conspiracy doctrine contends that employees of a corporation or municipality cannot be held to have conspired when they were acting within the course and scope of their employment.

The intra-corporate conspiracy doctrine, derived originally from antitrust law but now applied to many types of conspiracy actions, "generally provides that employees acting within the scope of their employment cannot be deemed culpable for conspiring with one another or with the entity that employs them." Rashdan v. Geissberger, No. 10-00634 SBA, 2011 WL 197957, at *6 (N.D. Cal. Jan. 14, 2011) (citing cases).  The Ninth Circuit has noted that there is a split of circuit court authority regarding whether the intra-corporate conspiracy doctrine applies to civil rights claims under Section 1985.  See Portman v. Cnty. of Santa Clara, 995 F.2d 898, 910 (9th Cir. 1993).  Some courts within the Ninth Circuit have declined to find that the doctrine precludes civil conspiracy claims in civil rights cases like this one.  See Ibarra v. City of

1  Watsonville, No. 12-cv-02271-EJD, 2013 WL 623045, at *8 (N.D. Cal.
2  Feb. 15, 2013); Rivers v. Cnty. of Marin, No. C-09-1614 EMC, 2010
3  WL 145094, at *7-8 (N.D. Cal. Jan. 8, 2010).  But others have held
4  that it applies.  See Rashdan, 2011 WL 197957, at *6.  The Court
5  agrees with the more cautious holding and declines to extend the
6  scope of the doctrine.

7       The Court also finds the County Defendants' first argument
8  unavailing.  The County Defendants are correct that conspiracy
9  alone is indeed not a cause of action but a legal doctrine for
10 imposing liability.  Applied Equip. Corp. v. Litton Saudi Arabia
11 Ltd., 7 Cal. 4th 503, 510-11 (Cal. 1994).  However, a claim for
12 civil conspiracy can rest on the commission of an actual tort.  Id.
13 at 511.  Since Plaintiffs have sufficiently alleged that (1) the
14 County Defendants formed and operated a conspiracy, (2) committed
15 wrongful acts or torts (e.g., false arrest and abuse of process)
16 pursuant to the conspiracy, and (3) damaged Plaintiffs in doing so,
17 Cnty. of Marin v. Deloitte Consulting LLP, 836 F. Supp. 2d 1030,
18 1045 (N.D. Cal. 2011), Plaintiffs' conspiracy claim cannot be
19 dismissed at this stage.  However, per above, Defendants Alexander,
20 Cain, and Salatnay are subject to state immunity to this claim, so
21 -- subject to amendment -- it survives only as to Defendants Wilson
22 and Fleshman.

23      **F.   Plaintiffs' Claims Against Crockett**

24      Plaintiffs assert only three claims against Defendant
25 Crockett: IIED, negligence, and child sex abuse and neglect.
26 Plaintiffs concede that they should have asserted negligence only
27 against the County Defendants.  Crockett Opp'n at 3.  That claim is
28 accordingly DISMISSED as to Defendant Crockett.  If Plaintiffs

United States District Court
For the Northern District of California

1   choose to file a second amended complaint, the new pleadings should

2   reflect that dismissal.  The Court therefore addresses only

3   Defendant Crockett's motion to dismiss the IIED and child sex abuse

4   and neglect claims, both of which are state law claims.  Plaintiffs

5   assert no federal causes of action against Defendant Crockett.

6   Defendant Crockett moves for dismissal of the child sex abuse

7   and neglect claim for lack of jurisdiction under Rule 12(b)(1).  He

8   argues that the Court should decline to take supplemental

9   jurisdiction over the claim because the state law aspect of it

10  substantially predominates over the Section 1983 claim over which

11  the Court has original jurisdiction.

12  The question here is whether supplemental jurisdiction

13  applies.  Title 28, Section 1367 of the United States Code provides

14  that, subject to two exceptions, "in any civil action of which the

15  district courts have original jurisdiction, the district courts

16  shall have supplemental jurisdiction over all other claims that are

17  so related to claims in the action within such original

18  jurisdiction that they form part of the same case or controversy

19  under Article III of the United States Constitution."  The relevant

20  exception appears in Section 1367(c)(2): "The district courts may

21  decline to exercise supplemental jurisdiction over a claim under

22  subsection (a) if . . . the claim substantially predominates over

23  the claim or claims over which the district court has original

24  jurisdiction."  Supplemental jurisdiction is discretionary, and "a

25  federal court should consider and weigh . . . the values of

26  judicial economy, convenience, fairness, and comity."  City of

27  Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)

28  (internal citations omitted).

1    The Court finds that Plaintiffs' claims against Defendant

2    Crockett substantially predominate over the federal claims they

3    raise against the County Defendants.  Plaintiffs' complaint

4    concerns primarily what they allege to have been gross misconduct

5    on the part of the County Defendants.  The Court's jurisdiction

6    here depends on its original jurisdiction over Plaintiffs' Section

7    1983 claims.  Plaintiffs' allegations against Defendant Crockett

8    are related to these claims, but they are exclusively state causes

9    of action connected to underlying allegations of abuse that do not

10   form the same case or controversy as Plaintiffs' claims over which

11   the Court has original jurisdiction.

12       Further, the Court finds that declining jurisdiction over

13   Plaintiffs' abuse claims better serves the values of judicial

14   economy, convenience, fairness, and comity in this case, since

15   Plaintiffs' claims against Defendant Crockett are based on

16   different facts and raise different issues than Plaintiffs' claims

17   against the County Defendants.  Plaintiffs' ninth cause of action,

18   for child sex abuse and neglect, is therefore DISMISSED with

19   prejudice.

20       Defendant Crockett did not move to dismiss Plaintiffs' IIED

21   claim against him on the same basis, but federal district courts

22   with the power to hear state law claims have discretion to keep or

23   decline those claims under the conditions set out in 28 U.S.C. §

24   1367(c).  United Mine Workers v. Gibbs, 383 U.S. 715, 725-26

25   (1966); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir.

26   1997).  The Court declines jurisdiction over Plaintiffs' IIED claim

27   for the same reasons stated above, though in any event, the Court

28   does not find that Plaintiffs' allegations on this claim are

plausible.  Plaintiffs' IIED claim against Defendant Crockett is DISMISSED with prejudice.

**V.    CONCLUSION**

As explained above, the Court GRANTS in part and DENIES in part Jon Alexander, Dean Wilson, Ed Fleshman, Julie Cain, Cindy Salatnay, and the County of Del Norte, California's (the "County Defendants") motion to dismiss.  The Court GRANTS Defendant Donald Crockett's motion to dismiss.  Specifically, the Court orders:

- Plaintiffs' Section 1983 claim based on excessive force under the Fourth Amendment is DISMISSED with leave to amend;
- Plaintiffs' remaining state law claims against Defendants Alexander, Cain, and Salatnay are DISMISSED with prejudice, except as to Plaintiffs' false arrest and false imprisonment claim as to Defendant Alexander, which remains undisturbed;
- Plaintiffs' state law claims against Defendants Wilson and Fleshman remain undisturbed;
- Plaintiffs' Section 1983 claim against the County of Del Norte is DISMISSED with leave to amend;
- Plaintiffs' complaint is DISMISSED with prejudice as to Defendant Crockett.

All of Plaintiffs' other claims remain undisturbed.

///

////

///

United States District Court
For the Northern District of California

1    Plaintiffs have thirty (30) days to file an amended complaint.

2 If they do not do so, the Court may dismiss Plaintiffs' deficient

3 claims with prejudice.

4

5    IT IS SO ORDERED.

6

7    Dated: December 13, 2013



8                                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28