UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BROWN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JON ALEXANDER, et al.,<br><br>    Defendants. | Case No. 13-cv-01451-RS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING THEIR MOTION TO DISMISS THE STATE LAW CLAIMS OF JANE DOES 1 AND 2** |

## I.   INTRODUCTION

On Monday, January 30, 2012, plaintiff Jennifer Brown took her minor children to Humboldt County without legal authority to do so. She and her ex-husband, Daniel Crockett, had been engaged in a contentious legal battle for the custody of their children, plaintiffs Jane Doe 1 and 2. The Del Norte County court considering these custody proceedings entered a custody and visitation order, awarding Crockett primary custody of the children. The court permitted Jennifer[1] to have custody of the children on the weekends, but required her to return the children to Crockett by 8:00 a.m. on Mondays. When she did not return the children to Crockett, a state judicial officer issued a protective custody warrant to apprehend the children and to deliver them to Child Protective Services of Del Norte County. After Jennifer twice failed to appear with the children at

---

[1]   Jennifer Brown's father, Barry Brown, is also a plaintiff in this action. The present motion does not concern any of his claims for relief. To avoid confusion, this order refers to these plaintiffs by their first names.

custody proceedings in defiance of the court's order, defendant Jon Alexander, the district attorney, filed an affidavit in support of a warrant to arrest Jennifer for child abduction. As a result of the arrest, Child Protective Services placed the children in foster care—an act Jennifer and her minor children now claim deprived them of their First and Fourteenth Amendment right to familial association.

Jennifer and Jane Does 1 and 2 accuse Del Norte County and its current and former employees Jon Alexander, Dean Wilson, and Edward Fleshman, of falsifying the affidavits filed in support of the arrest warrant and the protective custody warrant. They insist the defendants' false statements or material omissions lead to Jennifer's arrest and caused the deprivation of their fundamental right to familial association without due process. Plaintiffs also assert a host of state law claims.

Defendants previously moved for judgment on the pleadings, arguing that claim preclusion barred these claims. The motion was granted in part with one exception: plaintiffs' claim for the alleged deprivation of the right to familial association. Dkt. 83 at 31. Now, defendants again seek judgment on the pleadings or summary judgment and offer a new reason to enter judgment in their favor: the children and Jennifer were seized pursuant to a presumptively valid protective custody warrant, which was not addressed in the prior order. To respond to this challenge, plaintiffs had to produce evidence that the person who caused the warrant to issue "intentionally or recklessly made false statements or material omissions." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997) (discussing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). They fell well short of that mark. Applying either the standard for judgment on the pleadings or the summary judgment standard, plaintiffs have failed to plead or to support their § 1983 claims for violations of the right to familial association.

Although Jane Does 1 and 2 do not have any remaining federal claims, dismissal of their remaining state law claims would be contrary to the goals of judicial efficiency and the convenience of all parties concerned. Accordingly, their state law claims may proceed in this court.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 13-cv-01451-RS

2

## II. FACTS AND PROCEDURAL HISTORY[2]

Since the dissolution of their marriage, Jennifer Brown and Daniel Crockett have engaged in a lengthy, scorched-earth battle for physical custody of their children, Jane Does 1 and 2. After considering the parents' respective positions, the Del Norte County court issued a custody and visitation order, granting Jennifer visitation between 5:00 p.m. on Fridays and 8:00 a.m. on Mondays. RJN Ex. A at 000899. On January 27, 2012, Crockett returned the children to Jennifer, who alleges the children "appeared to be physically ill," SAC ¶ 12, requiring her to take them to the hospital. This lead, according to Jennifer, to a report by the hospital, accusing Crockett of medical neglect. Two days later, Jennifer returned to the hospital to address her concern that Crockett had sexually molested Jane Doe 1 and 2.

On January 30, having concluded Child Welfare Services were not responding adequately to these sexual abuse allegations, Jennifer and Barry took the children to Humboldt County for a Sexual Assault Response Team ("SART") exam. Before leaving, Barry informed Del Norte County officials by letter and by telephone that he was removing the Jane Does from the county for their safety in accordance with California Penal Code § 278.7.[3]

---

[2] Given the unusual posture of this motion, this recitation of the facts underlying this claim is derived from the plaintiffs' Second Amended Complaint ("SAC") and the Declaration of Jennifer Brown.

In addition, defendants request judicial notice of three documents filed in Del Norte County Superior Court: (1) a protective custody warrant issued for Jane Does 1 and 2, issued February 3, 2012; (2) an order to show cause, dated February 3, 2012; and (3) the court's findings and order, dated June 14, 2012. A "court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice of proceedings in other courts and the existence of court files, orders, or decisions. *Ambrosia v. Cogent Commc'ns, Inc.*, No. 14-CV-02182-RS, 2014 WL 4744409, at *2 n.2 (N.D. Cal. Sept. 22, 2014) (citing *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987)). These three documents are appropriate for judicial notice, and plaintiffs do not object to defendants' request. Defendants request for judicial notice is therefore granted.

[3] Criminal penalties for child abduction do not apply to those who have legal custody of the child, have "a good faith and reasonable belief that the child, if left with the other person, will suffer immediate bodily injury or emotional harm," and "takes, entices away, keeps, withholds, or conceals that child." Cal. Penal Code § 278.7(a). To qualify for this exception, however, the

Because January 30 fell on a Monday, Jennifer was obligated to return the children to Crockett by 8:00 a.m. When she did not do so, and, when she further failed to appear on February 3 at a pre-scheduled custody hearing, the court issued a protective custody warrant pursuant to California Family Code § 3134.5[4] at the request of the district attorney, defendant Jon Alexander. RJN Ex. A at 000899. In the warrant, the court specifically noted that it had information that the children may be in Humboldt County. *Id.* Additionally, the court issued an order to produce the children immediately and to show cause why the joint legal and physical custody order should not be modified. RJN Ex. B at 004454-56. On February 8, a state judicial officer issued an arrest warrant for Jennifer and Barry for child abduction based on affidavits, which stated that the children's whereabouts were unknown even though Wilson, Fleshman, and Alexander knew the children were in Humboldt County.

On February 10, 2012, Jennifer failed to appear at the hearing on the order to show cause. She avoided arrest until March 10, 2012. Following Jennifer's arrest for child abduction, the children were placed temporarily in foster care, thereby precluding Jennifer from any access to them.

Before her arrest, Jennifer contends she had been in contact with Child Welfare Services to arrange for the transfer of the minor children to foster care. She also claims that she spoke with

---

person who takes the child must take certain steps. He or she must (1) "[w]ithin a reasonable time from the taking, enticing away, keeping, withholding, or concealing, make a report to the office of the district attorney of the county where the child resided before the action," *id.* § 278.7(c)(1); (2) "commence a custody proceeding in a court of competent jurisdiction" "[w]ithin a reasonable time from the taking," *id.* § 278.7(c)(2); and (3) keep the district attorney apprised of any change of address for the person and the child, *id.* § 278.7(c)(3).

[4] In relevant part, Family Code § 3134.5(a) provides as follows:

> Upon request of the district attorney, the court may issue a protective custody warrant to secure the recovery of an unlawfully detained or concealed child. The request by the district attorney shall include a written declaration under penalty of perjury that a warrant for the child is necessary in order for the district attorney to perform the duties described in Sections 3130 and 3131. The protective custody warrant for the child shall contain an order that the arresting agency shall place the child in protective custody, or return the child as directed by the court.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 13-cv-01451-RS

4

Alexander on February 10—after the protective custody and arrest warrants issued—and told him that she was at a hotel in Humboldt County with her children.

In June 2012, a Del Norte County judge held a hearing and ordered the children to be returned to Crockett pending an evidentiary hearing on the order to show cause for modification of the custody and visitation order. RJN Ex. C. Dependency proceedings commenced, and the court ultimately awarded Crockett primary custody of the children after concluding that the molestation accusations were unfounded. The Court of Appeal affirmed the trial court's custody order. *See Del Norte Cty. Dep't of Health and Human Servs. v. J.B. (In re N.C.)*, 2014 WL 7190886, at *4, 6 (Cal. Ct. App. 2014).

In April 2013, Jennifer and Jane Does 1 and 2 filed this action, advancing a host of state and federal claims against defendants, including a claim for a Fourth Amendment violation for recklessly or knowingly submitting false statements or material facts in support of a warrant application. *See Franks*, 438 U.S. at 157. In particular, they claim Alexander, Wilson, and Fleshman omitted material information from the affidavits in support of the warrants to arrest Jennifer and Barry for child abduction. Defendants moved to dismiss the complaint, which was denied because plaintiffs averred that Alexander, Wilson, and Fleshman filed affidavits in which they stated that the minor children's whereabouts were unknown, when, in fact, Barry had provided them with notice of his intent to take the children to Humboldt County for their safety. Dkt. 50 at 21. Thus, plaintiffs' Fourth Amendment claims for false arrest and false imprisonment against Alexander and the state law claims against Wilson and Fleshman remained in the action. *Id.* at 38. Many of plaintiffs' other claims were dismissed with leave to amend.

Subsequently, plaintiffs filed a first amended complaint, which prompted the county to file a partial motion for judgment on the pleadings with respect to the § 1983 claims for First and Fourteenth Amendment violations of the right to associate with their family members. Defendants argued the doctrines of *Rooker-Feldman* and collateral estoppel barred these claims. The court concluded that *Rooker-Feldman* abstention was inapplicable, but that issue preclusion barred all but "[Jennifer's] and the children's claims that Defendants deprived them of the right to associate

1   with one another as a result of [Jennifer's] arrest in March 2012." Dkt. 83 at 31.  Defendants now
2   move a second time for judgment on the pleadings or summary judgment with respect to
3   Jennifer's and the minor plaintiffs' claim for deprivation of the right to familial association.

### III.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (footnote omitted).  Because the legal standards governing 12(b)(6) motions to dismiss and 12(c) motions for judgment on the pleadings are virtually identical, "[t]he standard articulated in *Twombly* and *Iqbal* applies equally." *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1187 (N.D. Cal. 2014) (citing *Chavez v. United States,* 683 F.3d 1102, 1108–09 (9th Cir.2012)).  The claim must therefore be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When courts consider motions for judgment on the pleadings, they are constrained to look at only the averments in the complaints or judicially noticeable documents "unless the motion is converted into a Rule 56 summary judgment." *Crosby v. Wells Fargo Bank, N.A.*, 42 F. Supp. 3d 1343, 1345 (C.D. Cal. 2014).

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party who seeks summary judgment bears the initial responsibility of identifying an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies this initial burden, the non-moving party must present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  "Only disputes over facts that might affect the outcome of the suit under governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue exists if the non-moving party presents evidence from which a reasonable fact-finder, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* at

248-49.

## IV. DISCUSSION

### A. Plaintiffs' Motion for Leave to File a Sur-Reply

Plaintiffs' attorney filed an "ex parte application to file a surrebuttal," which will be construed as a motion for leave to file a sur-reply. "Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval" with two exceptions: (1) objections to new evidence submitted in the reply; and (2) "a relevant judicial opinion published after the date the opposition or reply was filed." Local Rule 7-3(d). Plaintiffs' request for leave to file a sur-reply meets neither criteria, and therefore must be denied.[5]

### B. The Law of the Case Doctrine

Plaintiffs unavailingly argue the "law of the case" doctrine precludes defendants' present motion. The doctrine "acts as a bar only when the issue in question was actually considered and decided by the first court." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Here, however, the validity of the protective custody warrant was never considered or decided in the prior orders. Prior orders addressing the sufficiency of the pleadings examined only whether the averments established that Alexander, Wilson, or Fleshman had falsified the affidavits in support of the application for *arrest warrants* for Jennifer and Barry. The court did not consider whether Alexander lied or omitted material information in support of the *protective custody warrant*, and therefore defendants' motion may proceed.[6]

### C. The Right to Familial Association

Defendants contend the claims of the minor plaintiffs and Jennifer for violations of their

---

[5] Plaintiffs' counsel has repeatedly filed motions styled as "ex parte applications" that do not comply with the federal or local rules. The court directs her to consult the federal and local rules before she files anything further with this court.

[6] Plaintiffs complain that this second motion for judgment on the pleadings constitutes bad faith litigation. While piecemeal litigation is strongly discouraged, and defendants should have brought this in a consolidated motion, they have filed a procedurally proper motion. Plaintiffs have offered no other facts to support their claim that defense counsel has engaged in bad faith litigation tactics, and therefore this argument goes nowhere.

right to familial association cannot proceed in the face of the protective custody warrant. The First and Fourteenth Amendments protect a parent's "fundamental liberty interest in the companionship and society of his or her child[ren]." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001). Those seeking to vindicate government "interference with that liberty interest without due process of law" may turn to section 1983 for a remedy. *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985). In the absence of "prior judicial authorization," state actors may remove children from their parents only when they have "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Burke v. Cty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009).

Where, as here, officers rely on a presumptively valid warrant, the calculation changes slightly. Plaintiffs may attack the warrant on the grounds that the officers in their affidavits in support of the warrant either "knowingly and intentionally" made a false statement or acted "with reckless disregard for the truth," and that those statements or omissions were "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56.

The SAC includes no averments about the protective custody warrant or whether Alexander obtained that warrant by either making false statements or withholding material information. To address this point, Jennifer has submitted an extensive declaration—most of which is irrelevant to the claim presently under consideration. Jennifer has offered some facts, however, and therefore her declaration will be considered as a response to defendants' alternative motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[7]

---

[7] Attached to the plaintiffs' opposition brief is an order and opinion regarding Alexander's disbarment. They have not requested judicial notice of this document. Nor have they explained how Alexander's disbarment is relevant to any material facts in support of their First Amendment claims. Rather than respond to defendants' substantive legal arguments, plaintiffs make outrageous, speculative claims about Alexander's motivations and conduct in this matter. Such arguments are not relevant or proper in the context of this motion for summary judgment. At best, plaintiffs' arguments can be understood as pertaining to a potential malpractice claim against Alexander during a period before he served as district attorney. These complaints do not, however, shed any light on whether Alexander deprived plaintiffs of their right to familial affiliation.

Jennifer attests she called Alexander on January 30, 2012, and explained why she had taken the children and identified the room and hotel where she would be staying in Humboldt County. Brown Decl. ¶ 28. She also claims to have spoken with Alexander every day "several times" between January 30 and February 5. *Id.* These declarations do not, however, create a triable issue of material fact. Unlike the affidavits in support of the arrest warrants, there is reason to believe Alexander included information about the minor children's suspected whereabouts in his affidavit by virtue of the protective custody warrant. Although neither party has submitted Alexander's affidavit in support of the protective custody warrant, the warrant incorporates Alexander's declaration and expressly references "information" that the children are in Humboldt County. RJN Ex. A at 000899. Thus, in contrast with the declaration in support of the warrant for Jennifer's arrest, which stated that the children's whereabouts were unknown, Alexander's protective custody warrant affidavit relayed information about where the minor plaintiffs might be. Alexander's declaration in support of the protective custody warrant was therefore not false or misleading for stating that the children's whereabouts were unknown.

Moreover, the protective custody warrant reveals that Jennifer's violation of the custody and visitation order provided probable cause for its issuance. If a court has entered a custody or visitation order "and the child is taken or detained by another person in violation of that order, the district attorney shall take all actions necessary to locate and return the child and the person who violated the order and to assist the enforcement of" that order. Cal. Family Code § 3131. To that end, the district attorney may file a declaration in support of a protective custody warrant. *See id.* § 3135. Jennifer's contact with Alexander did not relieve her of the obligation to comply with the custody and visitation order or her duty to appear at the February 3 custody hearing. Accordingly, even if Alexander submitted false information in support of the application for the protective custody warrant, those statements were unnecessary to the finding of probable cause. *See Franks*, 438 U.S. at 155-56 (holding a Fourth Amendment violation arises only when the officer's false statements or material omissions were "necessary to the finding of probable cause."). Specifically, even if Jennifer had complied with California Penal Code § 278.7(a), such compliance relieved her

of the prospect of criminal punishment for child abduction, not her obligation to comply with the custody and visitation order.  Plaintiffs have therefore failed to show that a reasonable jury could conclude the county defendants impermissibly interfered with plaintiffs' right to familial affiliation; defendants are entitled to summary judgment.[8]

### D.  Supplemental Jurisdiction

Jane Doe 1 and 2 do not have any remaining federal claims in this action.[9]  In light of this fact, defendants urge dismissal of the minor plaintiffs' state law claims.  When "all claims over which [a district] has original jurisdiction" have been dismissed, "district courts may decline to exercise supplemental jurisdiction over," 28 U.S.C. § 1367(c)(3), "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," *id.* § 1367(a).  While district courts have discretion to accept or decline supplemental jurisdiction, "in the usual cases in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000-01 (9th Cir. 1997) (discussing the discretionary nature of § 1367(c) supplemental jurisdiction).  Dismissal of all federal claims is necessary, but not sufficient to authorize dismissal of supplemental state law claims.  *See Acri*, 114 F.3d at 1001.  Once one of the conditions of § 1367(c) has been satisfied, the court must weigh the values "of economy, convenience, fairness, and comity" to determine whether to exercise supplemental jurisdiction.  *Id.*

Judicial economy and convenience weigh in favor of retaining jurisdiction of the minor plaintiffs' state law claims.  This court has already expended considerable resources in connection

---

[8] Plaintiffs insist summary judgment is improper because Alexander did not submit a declaration.  Alexander does not, however, bear the burden to present facts at trial.  That burden lies with plaintiffs.  The absence of his declaration has no bearing on whether summary judgment is proper.

[9] Jennifer's Fourth Amendment claims for false arrest and false imprisonment remain.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 13-cv-01451-RS
10

with this suit since April 2013. The parties have filed numerous motions and exchanged discovery. Should Jane Does 1 and 2 file claims in state court, those courts would spend considerable and unnecessary time and resources to get up to speed with this case. Moreover, the federal claims of Jennifer and Barry—the minor plaintiffs' mother and maternal grandfather—remain in play and overlap significantly with the minor plaintiffs' state law claims. Accordingly, the minor plaintiffs' state law claims will continue with this court.

### V.   CONCLUSION

Jennifer and Jane Does 1 and 2 have failed to show that a jury should consider their claim for deprivation of the right to familial affiliation. Defendants are therefore entitled to summary judgment on those claims. Although the minor plaintiffs do not have any remaining federal claims, their state law claims may proceed in this court.

**IT IS SO ORDERED**.

Dated: March 3, 2016

_____
RICHARD SEEBORG
United States District Judge